FILED
JUL -1 2021
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RYAN JERMAINE SESSOMS,

      Petitioner,

v.                                           Criminal No. 2:19-cr-159

UNITED STATES OF AMERICA,

      Respondent.

*MEMORANDUM OPINION & ORDER*

Before the Court is Ryan Jermaine Sessoms' ("Petitioner") motion through counsel requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 47. The Government opposed the motion and Petitioner replied. ECF Nos. 52, 53. This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On December 5, 2019, Petitioner was named in a Three-count Superseding Indictment charging Petitioner with Distribution of Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count One), Felon in Possession of a Firearm, in violation of 18 U.S.C. §§922(g)(1) and 924(e) (Count Two), and Possession of a Mixture and Substance Containing a Detectable Amount of Buprenorphine, in violation of 21 U.S.C. 844(a) (Count Three). ECF No. 16. On January 24, 2020, Petitioner pled guilty to Count One of the Superseding Indictment. ECF Nos. 25, 26, 27. According to his Presentencing Report ("PSR"), on May 7, 2019, Petitioner met with a confidential informant working with local law enforcement to distribute heroin. ECF No. 44 at ¶ 12. Later, on June 20, 2019, Petitioner sold a Jimenez Arms 9mm pistol to the same confidential informant. *Id.* In all, Petitioner was attributed with 0.5 grams of cocaine, 0.5 grams of "crack" cocaine, 0.67 grams of heroin and nine packages of Buprenorphine and Naloxone

1

Sublingual Film. *Id.* at ¶ 19. In his PSR, Petitioner reported that he suffers from asthma and uses an inhaler as needed, has high blood pressure, and is epileptic and suffers from seizures. *Id.* at ¶ 82. Petitioner was assessed a total offense level of 31, a criminal history category VI, and a recommended guideline provision of 188 to 235 months imprisonment. *Id.* at ¶¶ 112-113. On June 1, 2020, the Court imposed a sentence of seventy-six (76) months imprisonment on Count One, followed by six years of supervised release. ECF Nos. 37, 39. Petitioner is currently incarcerated at FCI Cumberland with a projected release date of November 11, 2024.

On April 12, 2021, Petitioner filed his *pro se* motion for compassionate release. ECF No. 41. On May 17, 2021, Petitioner filed the motion through counsel. ECF No. 47. On June 10, 2021, the Government responded in opposition. ECF No. 62. Petitioner replied one June 14, 2021. ECF No. 53.

Petitioner alleges that his underlying health conditions place him at increased risk for serious illness should he contract COVID-19 and argues this warrants extraordinary and compelling reasons for his release. ECF Nos. 41, 47. Accordingly, Petitioner requests that the Court grant him compassionate release and allow him to begin his period of supervised release.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion

requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020).

### B. The Compassionate Release Standard

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required approval from the BOP before an individual could petition

3

the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Exhaustion Requirement

The Court finds that Petitioner did exhaust his administrative remedies prior to bringing his motion. On February 14, 2021, Petitioner filed a formal request with the Warden at FCI Cumberland. ECF Nos. 47, 52. Petitioner's request was denied by the Warden. *Id.* Petitioner then filed a motion before the Court. Thus, since Petitioner filed his request, more than 30 days has passed.

4

**B. Petitioner's Compassionate Release Request**

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen*, No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020). Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a potential susceptibility to serious health risks from COVID-19. According to Petitioner's medical records and PSR, at age 47, he suffers from primary hypertension (Stage I), obesity (BMI >40 kg/m2), asthma, seizure disorder, and post-traumatic stress disorder. *See* ECF No. 42 at Exhibit 1; ECF No. 48 (Sealed); *see also* ECF No. 44 at ¶ 82. However, Petitioner's medical records show that he is prescribed medication to control his high hypertension and uses an inhaler to control his asthma. *Id.* Furthermore, on March 2nd and 30th of 2021, Petitioner received his first and second dose, respectively, of the COVID-19 Moderna Vaccine. According to the Centers for Disease Control and Prevention, individuals with hypertension and severe obesity (BMI of ≥40 kg/m2) *can be* more likely to get severely ill if they

contract COVID-19.[1] Moreover, the CDC has found that the COVID-19 Moderna vaccine is "effective at preventing COVID-19 as seen in clinical trial settings."[2] Although individuals who are vaccinated may still contract COVID-19, they are significantly less likely to experience severe symptoms or be hospitalized as compared to unvaccinated individuals. *Id.* According to his medical records, Petitioner did not report any side effects to the vaccine. Therefore, Petitioner has not provided evidence showing that he is at high risk for serious illness due to COVID-19 which warrant extraordinary circumstances.

Second, however, Petitioner does show a potential risk of contracting the disease at his prison facility. That is, although Petitioner is vaccinated, there is still exists a possibility that he *could* contract COVID-19. As of June 23, 2021, the BOP has reported a total of 340 positive cases of COVID-19 for inmates and 58 for staff at FCI Cumberland.[3] Critically, however, there are zero active cases for COVID-19. Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for

---

[1] *See* Centers for Disease Control and Prevention, "COVID-19: People with Certain Medical Conditions," *CDC.gov*, (Updated May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html
[2] *See* Centers for Disease Control and Prevention, "Ensuring COVID-19 Vaccines Work: Vaccine Effectiveness," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness.html
[3] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov*, https://www.bop.gov/coronavirus/

that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, overall, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his PSR, Petitioner was distributing cocaine, crack, and heroin from April 2019 to June 2019. ECF No. 44 at ¶ 12He was also in possession of a firearm and Buprenorphine and Naloxone Sublingual Film. *Id.* Moreover, Petitioner has an extensive criminal history starting at age 17 when he was convicted of breaking and entering and unauthorized use of an auto. *Id.* at ¶¶ 37-38. As an adult, from age 18 through 38, Petitioner received multiple convictions including Possession of Alcohol Underage, Possession of Cocaine, Failure to Appear (four counts), Threatening Bodily Harm, Driving while Suspended (four counts), Assault and Battery, Threaten to Kill, Possession of Cocaine with Intent to Distribute (two counts), Possession of Marijuana, Distribution of Cocaine – 1st and 3rd Offense. *Id.* at ¶¶ 41-56. Moreover, Petitioner was arrested numerous times for various violent, weapons, and drug offenses. *Id.* at ¶¶ 62-77. In all, Petitioner was assessed a total offense level of 31, a criminal history category VI. *Id.* at ¶¶ 112-113. To date Petitioner has served about 30% of his sentence. ECF No. 47 at Exhibit 1.

While in prison, Petitioner has demonstrated some evidence of rehabilitation. To his credit, Petitioner has not received any disciplinary infractions and he has completed three classes. ECF No. 47 at Exhibit 1 at 9. The Court also notes that there has been limited programming available to Petitioner due to COVID-19 lockdowns.

Overall, the Court finds that the § 3553(a) factors do not weigh in Petitioner's favor and his release would not promote the respect for law or provide adequate deterrence. Critically, Petitioner did not show extraordinary or compelling reasons for release due to COVID-19.

Therefore, Petitioner does not qualify for compassionate release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for compassionate release, ECF No. 47, is **DENIED**. Furthermore, Petitioner's *pro se* Motion for Compassionate release, ECF No. 41, is **Moot**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Norfolk, Virginia
June 30, 2021

/s/ Raymond A. Jackson
UNITED STATES DISTRICT JUDGE